IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON, KENTUCKY
CIVIL ACTION NO. 04-144-JBC
FILED ELECTRONICALLY

ROBERT G. STRATTON, JR., M.D.                                                         PLAINTIFF

v.

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL AND FOR SANCTIONS**

AMERICAN BOARD OF FAMILY PRACTICE, INC.                          DEFENDANT

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Defendant American Board of Family Practice, Inc. ("ABFP" or "Defendant"),[1] by and through its undersigned counsel, states as follows for its Memorandum in Opposition to Plaintiff's Motion to Compel Discovery Responses and for Sanctions:

**FACTUAL BACKGROUND**

ABFP is a medical specialty board engaged in the certification, recertification and Maintenance of Certification of physicians in the specialty of Family Practice. ABFP is a non-profit organization which exists for the following purposes: (1) to grant and issue to physicians licensed by law certificates of special achievement in Family Practice and to suspend or revoke such certificates; (2) to certify and recertify physicians in the specialty of Family Practice by examination and otherwise, and to administer and conduct those examinations; and (3) to maintain a registry of those certified by ABFP and to serve the public, physicians, hospitals, and medical schools by furnishing lists of those Diplomates who appear on the registry. To become certified as a Diplomate of the ABFP, a candidate must satisfy certain qualification requirements,

---

[1] Effective January 1, 2005, ABFP has changed its name to the American Board of Family Medicine, Inc. ("ABFM"). For purposes of consistency, the Defendant will be referred to herein as "ABFP" or "Defendant."

including, but not limited to: (1) holding a full and valid unrestricted license to practice medicine in the United States, (2) completing a residency training program, and (3) satisfying all examination requirements of ABFP.

Applying for and becoming certified as a Diplomate of ABFP is purely voluntary on the part of the physician. There is no legal or professional prerequisite or requirement of certification in order to be licensed to practice medicine.

ABFP entered into reciprocity agreements with professional medical certifying organizations in other countries, including the Royal College of General Practitioners of Great Britain ("RCGP"). Pursuant to these agreements, Diplomates of ABFP may be eligible to seek certification by the foreign colleges, and members in good standing of the foreign colleges who meet certain other requirements of ABFP and reside in the United States may be eligible to sit for the ABFP certification examination. As originally constituted, the reciprocity agreement with RCGP provided that physicians who have been certified by the RCGP by examination generally may apply for certification by ABFP if they: (1) are members in good stranding of the RCGP; (2) reside in the United States; (3) hold a valid and unrestricted license to practice medicine in the United States; and (4) are actively involved in family practice in the United States.

In August of 1997, ABFP revised and amended the reciprocity agreement to include an additional requirement for eligibility, which required that a physician also possess a Certificate of Prescribed/Equivalent Experience issued by the Joint Committee on Post Graduate Training for General Practice (a "CPE Certificate"). This new reciprocity agreement and the additional requirement for eligibility was to be effective for ABFP certification examinations subsequent to the July, 1998 certification examination.

The Plaintiff periodically corresponded with ABFP over the past fifteen years regarding his desire to sit for an ABFP certification examination, and the fact that he has not completed a residency training program, which is a requirement of eligibility for certification. In Plaintiff's Complaint, Plaintiff states that he became a member of the RCGP in an attempt to obtain eligibility for ABFP certification through ABFP's reciprocity agreement with RCGP. According to Plaintiff's Complaint, he gained membership to the RCGP in July of 1999, and contacted ABFP in an attempt to apply for the next certification examination in July of 2000. However, because Plaintiff failed to meet a requirement of eligibility for certification through the RCGP reciprocity agreement, namely that he must possess a CPE Certificate, Plaintiff was not permitted to sit for a certification examination. On May 2, 2003, the Plaintiff filed suit in the U.S. District Court for the Eastern District of Pennsylvania[2] (the "Pennsylvania Action") seeking damages for breach of contract and promissory estoppel based upon ABFP's failure to allow him to sit for the certification examination, despite the fact that he had not met all the necessary requirements for eligibility.

The Pennsylvania Action was eventually dismissed upon ABFP's motion for lack of personal jurisdiction. ABFP's motion to dismiss was granted after the parties conducted limited discovery and a hearing before the Court on the motion. However, Plaintiff filed a Motion for Reconsideration requesting the Court to reconsider its ruling, which is still pending before the Eastern District of Pennsylvania.

Plaintiff then proceeded to file this suit on or about March 30, 2004, adding claims for intentional and negligent misrepresentation. On or about October 3, 2004, Plaintiff served a document on Defendant entitled "First Interrogatories of Plaintiff, Robert G. Stratton Jr., M.D. Directed to Defendant, American Board of Family Practice, Inc." which requested information

---

[2] _Robert G. Stratton, Jr., M.D. v. American Board of Family Practice, Inc._, Case No. 03-2522.

and documents from ABFP. Plaintiff requested that Defendant provide responses to the "Interrogatories" within sixty (60) days. On December 3, 2004, ABFP served responses on Plaintiff, which are attached hereto as Exhibit "A" (the "Responses"). While Defendant properly objected to several of Plaintiff's requests, Defendant delivered to Plaintiff along with the Responses copies of all of the documents listed on the Schedule 8 which was attached to the Responses. On or about January 28, 2005, Plaintiff filed a motion to compel, requesting the Court to "issue an order compelling Defendant to provide complete and responsive answers to Plaintiff's First Set of Interrogatories Propounded to Defendant."

## ARGUMENT

Because all of Plaintiff's requests which are at issue are improper and seek information and documents outside the scope of permissible discovery, Plaintiff's Motion to Compel and for Sanctions should be denied.

In his Motion, Plaintiff does not specify with any particularity the information or documents which he seeks to compel Defendant to produce, nor does he begin to explain how these materials are relevant to this action. Instead, Plaintiff alleges only that Defendant "has failed to tender adequate responses to the properly served December 22, 2004 Interrogatories [*sic*] . . . ." In order to obtain an order to compel the production of documents, a party must specify documents sought and their relevance to the action. Potts v. Allis Chalmers Corp., 118 F.R.D. 597 (N.D. Ind. 1987). Because Plaintiff fails to properly identify the information and documents which he seeks to compel production of, Defendant will address in turn its objections to each request which is at issue.

### I. INTERROGATORIES NOS. 1 AND 2.

Interrogatory No. 1 propounded by the Plaintiff stated as follows:

4

>Identify all U.S. - licensed physicians, who were not U.K. nationals, and who did not complete an ACGME approved Family Practice residency, who applied for ABFP certification after obtaining Membership in Good Standing with the RCGP, but before the 1997 amendment of ABFP's Reciprocity Agreement with the RCGP to add the eligibility requirement of a Certificate of Prescribed/Equivalent Experience issued by the Joint Committee on Post Graduate Training for General Practice?
>
>What are the names, addresses and phone numbers of these individuals?

Interrogatory No. 2 propounded by the Plaintiff stated as follows:

>Identify all U.S. -licensed physicians, who were not U.K. nationals, and who did not complete an ACGME approved Family Practice residency, who applied for ABFP certification after obtaining Membership in Good Standing with the RCGP, but after the 1997 amendment of ABFP's Reciprocity Agreement with the RCGP to add the eligibility requirement of a Certificate of Prescribed/Equivalent Experience issued by the Joint Committee on Post Graduate Training for General Practice?
>
>What are the names, addresses and phone numbers of these individuals?

Defendant objected to both of these Interrogatories on the grounds that (1) they were overly broad, unduly vague and ambiguous, and unduly burdensome, (2) the information sought by the interrogatories is privileged, confidential, and in some instances protected by other applicable statutes, and (3) the information sought is not in any manner whatsoever material or relevant to this case.

With these two Interrogatories, Plaintiff essentially seeks the names, addresses and phone numbers of individuals who were similarly situated to himself and applied for ABFP certification before and after the amendment of the Reciprocity Agreement. Defendant objects to the production of this information on several grounds. First, ABFP generally maintains as confidential personal information submitted by physicians in connection with their application for ABFP certification. ABFP has adopted a Statement of Privacy Policy which governs its

collection, use, and disclosure of personal, professional and financial information from Diplomates, examination candidates and others.[3]  Defendant's Privacy Policy provides in part:

> In connection with the registration of examination candidates and the administration of certification and recertification examinations . . .ABFM will collect personal information such as names, street or post office box addresses, e-mail addresses, etc., and in some cases financial information. . . . ABFM will restrict access to personal and financial information collected by ABFM to ABFM employees and contractors who need to know this information in order to conduct business and affairs with ABFM.  Other than is discussed herein, ABFM does not disclose personal or financial information about applicants to outside companies or third parties, except as required by law (such as complying with a subpoena or court order).

Thus, requiring Defendant to produce the names, addresses and phone numbers of examination applicants will cause Defendant to violate its Privacy Policy.  Examination applicants clearly have an important privacy interest in this personal information which Defendant is obligated to protect.  By producing this information, Defendant would not only be disclosing the names, addresses and phone numbers of these individuals, but would also by implication be publicly disclosing other confidential and sensitive information sought by the Interrogatory, such as: (1) that the individual did not complete an ACGME approved family practice residency, and (2) when the individual applied for ABFP certification.  Defendant would also be implicitly disclosing confidential information regarding whether an individual successfully passed or failed a particular ABFP examination.[4]

While in correspondence Plaintiff has indicated a potential willingness to enter into an agreed protective order regarding some or all of the information sought, Defendant does not

---

[3] ABFP's Privacy Policy is posted on its website, www.theabfm.org.  For the convenience of the Court, a copy of the Privacy Policy is attached hereto as Exhibit "B".

[4]  While the results of ABFP examinations are not disclosed to the public, ABFP does maintain a public registry of Diplomates which reflects the period a Diplomate is certified.  Thus, for instance, if Defendant discloses that Applicant X meets the criteria specified by Interrogatory No. 1 and applied for ABFP certification before the effectiveness of the amendment to the Reciprocity Agreement in 1998, one could then determine that Applicant X did not successfully pass that examination if ABFM's public records indicate that Applicant X did not become a Diplomate prior to 1998.

6

believe a protective order would be an effective means of preventing the disclosure of this information for several reasons. First, Plaintiff has indicated in correspondence that he intends to contact the individuals in question regarding these proceedings.[5] Such actions by Plaintiff clearly would require a disclosure of this confidential information outside of this litigation. Second, Plaintiff has previously indicated his intention to disregard the terms of an agreed protective order and disclose sensitive information provided to him by Defendant. In the Pennsylvania Action, the parties conducted limited discovery with respect to issues raised in Defendant's Motion to Dismiss, including Defendant's contacts with the State of Pennsylvania. Defendant agreed to disclose sensitive and confidential financial information sought by Plaintiff on the condition that Plaintiff enter an agreed protective order restricting the disclosure of that information to third parties. Plaintiff agreed and signed a protective order, but later indicated his intention to disregard his obligations under the protective order after the Court failed to rule in his favor.[6] Thus, Defendant has serious concerns that the sensitive information requested by Plaintiff, if produced, will not be treated with the appropriate level of confidentiality.

Defendant also objects to the production of this information on the grounds that it would be unduly burdensome to determine the individuals described in Interrogatories Nos. 1 and 2 and produce the requested information. While Defendant believes only a handful of applicants meet this criteria, it would likely require an exhaustive review by hand of hundreds, if not thousands, of applicant files to determine the applicants which meet each of the complicated criteria outlined in the requests. Additionally, ABFP's Privacy Policy requires that it notify any physician effected prior to disclosure of confidential information. Thus, Defendant will have the

---

[5] See Exhibit "D" to Plaintiff's Motion to Compel.
[6] See letter from Plaintiff to Dr. Joseph Tollison dated March 17, 2004, attached hereto as Exhibit "C".

additional burden to notify each physician whose personal information is disclosed in response to Plaintiff's Interrogatories.

Lastly, Defendant objects to the production of this information because it has no relevance to this case. In his letter dated December 22, 2004,[7] Plaintiff indicates that he needs this information in order to "contact other individuals who relied upon some or all of the same representations, as potential witnesses," because a central issue of the case is whether his reliance upon certain alleged representations by Defendant were reasonable.

First, with the exception of a statement which appeared in an article in a professional publication, all of the alleged representations cited by Plaintiff in his Complaint to support his claims were communications made directly by Defendant to Plaintiff in the form of telephone conversations or written correspondence. Therefore, it cannot be said that other physicians who may have been similarly situated to Plaintiff relied on or even were aware of these alleged representations. Information regarding similarly situated individuals has absolutely no relevance to the issues associated with the Plaintiff's claims for breach of a unilateral contract, promissory estoppel, or negligent or intentional misrepresentation. When the sensitive and confidential nature of the information sought by Plaintiff is considered in light of the irrelevance which it bears to this case, it is clear that Defendant should not be compelled to produce this information.

## II. INTERROGATORIES NOS. 6, 7, 8 and 10

Defendant also objected to Interrogatories 6, 7, 8 and 10 on the grounds that these requests were overly broad and ambiguous, the information sought was not relevant to the case, and in some cases the material is privileged and/or confidential and would be unduly burdensome to produce.

---

[7] A copy of this letter is attached as Exhibit "D" to Plaintiff's Motion to Compel.

As an initial matter, it must be noted that Interrogatories 6, 7, 8 and 10 are not truly "interrogatories" within the meaning of Rule 33, but are in fact requests for production which seek documents and tangible things in accordance with Rule 34. Therefore, Plaintiff's inappropriate requests and Defendant's objections thereto will be analyzed in the context of Rule 34 as requests for production.

Rule 34 (b) requires that a stated time, place, and manner for inspection and copying be included in a request for production. In the case of each request, Plaintiff does not specify or propose a time, place, and manner for inspection and copying of the documents he requests. In the case of each request, Defendant registered its objection to the request, but also complied with the portion of the request which sought properly discoverable documents, and either delivered copies of those documents to the Plaintiff as a courtesy, or indicated its willingness to permit the inspection and copying of those documents at a reasonable time and location.

**A. Interrogatory No. 6.**

Interrogatory No. 6 provided as follows, "Please provide a copy of the Minutes of the entire ABFP Credentials Committee Meeting of 2/14/2000." Because no meeting of the ABFP Credentials Committee was held on February 14, 2000, Defendant noted in its response that it was interpreting Plaintiff to refer to the Credentials Committee Meeting held on February 10, 2000,[8] at which the Credentials Committee reviewed Plaintiff's request for eligibility under the prior Reciprocity Agreement.

The Credentials Committee is a committee consisting of members of the Board of Directors of Defendant. Among the duties of the Credentials Committee is to review grievances relative to an applicant's eligibility to take a certifying or recertification examination, the status of a Diplomate whose certification or recertification is in jeopardy, grievances relative to matters

---

[8] However, Defendant also mistakenly referred to this meeting as occurring on February 10, 2004 in its Responses.

9

involving the Americans with Disabilities Act, as well as instances of physician misconduct which may jeopardize eligibility for certification.

While the Committee will generally review the cases of several physicians at a single meeting, each physician's case is reviewed individually by the Committee. Minutes of the meeting are recorded and organized so that each case is assigned a section of the minutes which reflects all of the discussion and action taken on the particular physician's case.

In response to Interrogatory No. 6, Defendant indicated that the portion of the minutes of the Credentials Committee meeting of February 10, 2000 which related to Plaintiff would be made available for inspection and copying at the offices of Defendant's counsel, upon reasonable notice, or, alternatively the portion of the minutes would be duplicated and delivered to Plaintiff.

Defendant objects to this request primarily because it seeks a copy of the "entire" minutes of the February 10, 2000 Credentials Committee meeting. Production of the entire minutes of the meeting would require disclosure of the discussion and action by the Credentials Committee on cases of other physicians involving a variety of matters which come before the Credentials Committee. Defendant has an obligation to maintain this information regarding other physicians as strictly confidential. The information regarding these other physicians is of a sensitive and personal nature and can involve information regarding physician misconduct, physician licensing and qualification issues, as well as private medical information (as in the case of requests for testing accommodation under the Americans with Disabilities Act). Disclosure of the entire Credentials Committee meeting minutes would violate Defendant's Privacy Policy. The minutes which reflect the Credentials Committee's review of cases of other physicians has absolutely no relevance to this case, and as such would be an unwarranted invasion in the privacy interest of those physicians.

As a courtesy, Defendant has delivered to Plaintiff a copy of the portion of the minutes which contain all discussion and action taken in the meeting regarding his case. See Exhibit "D" attached hereto.

**B. Interrogatory No. 7.**

Interrogatory No. 7 provides as follows:

> Identify and attach copies of all corporate documents for ABFP, Inc., including but not limited to: (a) bylaws; and (b) corporate resolutions and minutes from board of directors meetings, committee meetings, and subcommittee meetings, which refer or relate to Plaintiff or ABFP-RCGP reciprocity agreement.

Defendant objected to this request on the grounds that it was overly broad, unduly vague and ambiguous, that the information was not relevant or material to the case, and that production of the material would be unduly burdensome. However, Defendant indicated in its response that the portions of the minutes of Board meetings of Defendant which related to Plaintiff would be made available for inspection and copying at the offices of Defendant's counsel upon reasonable notice, or alternatively, those materials would be duplicated and delivered to Plaintiff upon reasonable notice. As a courtesy to Plaintiff, the portions of the minutes of Board meetings and Board actions of Defendant which relate to the Plaintiff and/or the amendment of the RCGP Reciprocity Agreement have been delivered to Plaintiff. See Exhibit "D" attached hereto.

Rule 34(b) requires that a request for production describe the items to be inspected with "reasonable particularity." Plaintiff's request is improper because it clearly fails to specify the items requested with reasonable particularity. The request is overbroad, vague and ambiguous in that it requests "all corporate documents" for Defendant. There are no time limits or other descriptive limits on the scope of the request. Because Defendant is a corporation which was

11

established in 1969, virtually any document or record generated or maintained by Defendant in the past 35 years regarding its business or activities could be considered a "corporate document."

The request is a classic example of an overbroad "blanket" request which fails to specify the items requested with reasonable particularity. Courts have consistently ruled that such requests are improper. *See* In re: Dayco Corp. Derivative Securities Litigation, 102 F.R.D. 468 (S.D. Ohio 1984) (blanket request for "all financial records" is overbroad); International Commodities Corp v. International Ore & Fertilizer Corp., 30 F.R.D. 58 (S.D. N.Y. 1961) (plaintiff's blanket demand for production of all papers belonging to corporate defendant and its allied subsidiaries with no limitation on scope, time, or reasonable category would be denied); Lever Bros. Co. v. Procter & Gamble Manufacturing Co., 38 F.Supp. 680 (D.C. Md. 1941) (requests for "all written reports, memoranda, or other records of conferences of officers or members of the technical staff of the defendants" in which certain manufacturing processes were discussed, is too general and comprehensive); United States v. Schine Chain Theaters, Inc., 2 F.R.D. 425 (D.C. N.Y. 1942) (production of every writing in possession of defendant, relative to transactions between it and certain other persons over a period of years was not sufficient designation).

The request clearly includes within its scope "corporate documents" which are protected by applicable privileges, such as the attorney-client privilege and the work product privilege. Further, it cannot be disputed that requiring Defendant to produce every "corporate document" generated or maintained by Defendant over the course of the past 35 years would be unduly burdensome. It can also be safely said that nearly all of the documents which would be produced pursuant to such a request would have absolutely no relevance to this case.

As discussed above, Defendant indicated its willingness to permit Plaintiff to inspect and copy those minutes of Board meetings related to Plaintiff's case, upon reasonable notice at the office of Defendant's counsel.

Contributing to the overbroad and ambiguous nature of the request was Plaintiff's further statements in his letter dated December 22, 2004, in which he indicates (1) that he may remove his request for a copy of the Defendant's Bylaws as long as he may inspect them at the offices of Defendant's counsel and (2) that he does not need Defendant's corporate resolutions related to the Reciprocity Agreement as these were previously given to him at the hearing held in the Pennsylvania Action. Again, as a courtesy, Defendant has delivered to Plaintiff copies of the portions of minutes of Board meetings and Board action relating to Plaintiff and the amendment of the Reciprocity Agreement. The Defendant is willing to permit Plaintiff to inspect and copy other relevant and non-privileged "corporate records" if Plaintiff can specify these documents with reasonable particularity sufficient to give Defendant some indication of what is being requested.

### C. Interrogatory Nos. 8 and 10.

Interrogatory No. 8 provides as follows:

> Please identify all documents within the knowledge, custody or control of ABFP other than documents prepared in anticipation of litigation or trial which contain facts or opinions relevant to the incidents asserted in plaintiff's complaint, stating: (a) the date of the document and the name and address of the person or persons making same; (b) the title and a short description of the document sufficient to identify the contents or subject matter; (c) the person who presently has custody or control of the document.

Interrogatory No. 10 provides as follows: "Please identify and attach copies of all information in your files on Robert Stratton, Robert G. Stratton or Robert G. Stratton Jr."

13

Defendant objects to these requests on the grounds that they are overly broad, unduly vague and ambiguous, unduly burdensome and seek some information which is privileged and confidential, as well as information which is not relevant to this case. However, Defendant did produce and deliver to Plaintiff all of the documents listed on the Schedule 8 which was attached to Defendant's Responses, which consist of all documents and materials in Defendant's files for the Plaintiff and the RCGP Reciprocity Agreement, other than privileged information. As a courtesy to Plaintiff, Defendant delivered copies of these documents to the Plaintiff.

Like Interrogatory No. 7, Interrogatories 8 and 10 are improper "blanket requests" which are patently overbroad, vague, and ambiguous and do not describe the items sought with reasonable particularity. Interrogatory No. 8 seeks "all documents…which contain facts or opinions relevant to the incidents asserted in Plaintiff's Complaint." Interrogatory No. 10 requests "copies of all information in your files on Robert Stratton, Robert G. Stratton or Robert G. Stratton, Jr." As discussed above, courts have consistently found these types of blanket requests to be improper. *See* Dynatron Corp v. U.S. Rubber Co., 27 F.R.D. 480, 481 (D.Conn. 1961) (request for "all data relating to certain facts" is improper); Balistrieri v. O'Farrell, 57 F.R.D. 567, 569 (E.D. Wis. 1972) (request for simply "file pertaining to the defendants" is improper); Kidwiler v. Progressive Paloverde Ins. Co., 192 F.R.D. 193 (N.D. W.Va. 2000) (a document request is not reasonably particular if it merely requests documents "related to a claim or defense" in the litigation); Frank v. Tinicum Metal Co., 11 F.R.D. 83 (D.C. Pa. 1950) (blanket request for production of all books and records relating to subject matter is too general); Mercantile Metal & Ore Corp v. American General Supply Corp., 12 F.R.D. 345 (D.C. N.Y. 1952) (request for all documents "which may be material to the issues" is not sufficiently specific); and Hare v. Southern Pacific Co., 9 F.R.D. 307 (D.C. N.Y. 1949) (plaintiff under Rule

34 could not simply request inspection of "all reports, investigations, and statements" relative to accident).

These requests do not describe the items or documents sought with reasonable particularity as required by Rule 34. They are overbroad, vague and ambiguous in that they do not give Defendant notice of what information is sought, they include within their scope information which is protected by privilege, as well as information which exceeds the scope of discovery under Rule 26 and is not relevant to this case. To the extent these requests seek documents and materials which are appropriately discoverable under the Federal Rules of Civil Procedure, Defendant has complied with the request by delivering to Plaintiff copies of all documents in their files related to Plaintiff and the amendment of the Reciprocity Agreement.

## CONCLUSION

As discussed herein, Plaintiff's discovery requests which are at issue are improper, and Defendant has complied with the requests to the extent they seek information which is properly discoverable. As such, Plaintiff is clearly not entitled to sanctions under Rule 37.

For the foregoing reasons stated herein, Plaintiff's Motion to Compel and for Sanctions should be DENIED.

Respectfully submitted,

s/_____Brian A. Ritchie_____
J. Whitney Wallingford
Brian A. Ritchie
Wallingford Law, PSC
3141 Beaumont Centre Circle, Suite 302
Lexington, KY 40513
Telephone: (859) 219-0066
Fax: (859) 219-0077
E-mail: brian@wallingfordlaw.com

COUNSEL FOR AMERICAN BOARD OF
FAMILY PRACTICE, INC.

15

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2005, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed a copy of the foregoing document and the Notice of Electronic Filing first class mail, postage pre-paid to the following non-CM/ECF participant:

>Robert G. Stratton, Jr., M.D.
>P. O. Box 80
>Oley, PA  19547
>*Plaintiff not represented by Counsel*

>s/_____Brian A. Ritchie_____
>J. Whitney Wallingford
>Brian A. Ritchie
>Wallingford Law, PSC
>3141 Beaumont Centre Circle, Suite 302
>Lexington, KY 40513
>Telephone: (859) 219-0066
>Fax: (859) 219-0077
>E-mail: brian@wallingfordlaw.com
>
>COUNSEL FOR AMERICAN BOARD OF
>FAMILY PRACTICE, INC.