UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

CIVIL ACTION NO. 04-144-JBC

ROBERT G. STRATTON, JR.,                                                               PLAINTIFF,

V.                    **MEMORANDUM OPINION AND ORDER**

AMERICAN BOARD OF FAMILY MEDICINE, INC.,
f/k/a AMERICAN BOARD OF FAMILY PRACTICE, INC.,          DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendant's motion for summary judgment (DE 23). The court, having reviewed the record and being otherwise sufficiently advised, will grant the defendant's motion in part and deny it in part.

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party's burden can be satisfied by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id*. at 324-25. To survive summary judgment, the non-moving party must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). The non-moving party must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. Pro. 56 (e). The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**I.      Background**

The plaintiff, Dr. Stratton, is a physician specializing in family practice. The defendant, the American Board of Family Practice ("ABFP")[1], certifies qualified family practitioners who satisfy the ABFP's criteria and successfully complete an annual examination. ABFP certification is not a prerequisite to practicing medicine, but nonetheless can be crucial to a doctor's career.

Starting in 1989, the ABFP and similar organizations in other countries entered into agreements whereby a physician in one of the participating countries could gain certification in another without meeting all of the formal requirements. The ABFP and the Royal College of General Practitioners of Great Britain ("RCGP") had such an agreement (the "Reciprocity Agreement").

The typical requirements for ABFP certification include (1) being licensed in the United States; (2) completing a residency training program; and (3) passing the ABFP examination. The Reciprocity Agreement enabled a physician to take the ABFP examination despite not having completed a residency in the United States if he (1) was a member of the RCGP; (2) lived in the United States; (3) was licensed to practice medicine in the United States; (4) was ethically acceptable; and (5) actively practiced family medicine in the United States.

Dr. Stratton was interested in becoming ABFP-certified, and he learned of the

---

[1] The ABFP has changed its name to the American Board of Family Medicine. For simplicity, the court will refer to the organization as the ABFP throughout this opinion.

Reciprocity Agreement in the fall of 1995 while reading the *Family Practice News*. For various reasons, Dr. Stratton decided to pursue ABFP certification under the terms of the Reciprocity Agreement rather than by completing the domestic requirements.

In 1995, the ABFP decided to amend the Reciprocity Agreement, effective after the July 1998 ABFP examination, to require applicants seeking certification based on reciprocity to complete domestic residency training. RCGP members who were otherwise qualified for certification under the Reciprocity Agreement could sit for the ABFP examination through and including the July 1998 test without completing the residency requirement.

The ABFP first published the amendment to the Reciprocity Agreement in the May-June 1996 issue of its official publication, the *Journal of the American Board of Family Practice*. The announcement states that

> eligibility to sit for the [ABFP] Certification Examination through reciprocity will be available only to physicians who have satisfactorily completed formal training in family practice.
> After the July 1998 examination, physicians will not be allowed to sit for the ABFP examination via the reciprocity route unless they have completed formal training accredited by a nationally recognized accrediting organization within the country in which they are certified. Applications will have to be satisfactorily completed by February 1, 1998.

*9 J. Am. Bd. Fam. Prac.* 228 (May-June 1996). By 1997, a substantially similar notice appeared in the ABFP *Candidate Information Booklet*, in the ABFM *Booklet of*

*Information*, in the American Medical Association's *Graduate Medical Education Directory*, and on the ABFP's website. No announcement was posted in the *Family Practice News*, and Dr. Stratton did not see the notice in any of the other sources. In fact, Dr. Stratton read about reciprocal certification as recently as May 1997 in an issue of *Medical Economics*.

In October 1996, Dr. Stratton contacted Dr. Paul Young, the Executive Director of the ABFP at the time, who verified the availability of reciprocal certification. Also in October 1996, Dr. Stratton applied to take the RCGP examinations. Dr. Stratton's RCGP application was approved in April 1997. The RCGP examination consists of several parts, each of which must be completed successfully for certification. Dr. Stratton made several attempts to pass the entire test and finally succeeded on his sixth trip to Great Britain in May 1999. Dr. Stratton received his RCGP certification on August 23, 1999.

On January 7, 1998, while he was still in the RCGP certification process, Dr. Stratton contacted the ABFP to request an application for examination premised on RCGP membership. Dr. Stratton said he expected to "soon have all the necessary documents for eligibility to take the 1998 American Board of Family Practice examination." Dr. Joseph Tollison, then Deputy Executive Director of the ABFP, responded on February 17, 1998, reiterating that "[e]ligibility under the criteria you outlined in your recent letter would require that you be a member in good standing of the [RCGP]," asking Dr. Stratton to provide documentation of his RCGP

membership, and informing him of the additional requirements for certification. Because Dr. Stratton, contrary to his expectations, did not pass the RCGP exam until 1999, his next communication with the ABFP was not until September 21, 1999, at which time he wrote the ABFP to apply for the next examination. His application and subsequent requests to take the examination based on the Reciprocity Agreement were rejected without opportunity for appeal, because he failed to meet the requirements of the amended policy.

Dr. Stratton sued the ABFP for (1) breach of unilateral contract; (2) promissory estoppel; (3) negligent misrepresentation; and (4) intentional misrepresentation. The ABFP has moved this court for summary judgment on all counts.

**II.     Legal Analysis**

    **A.     Breach of Unilateral Contract**

Dr. Stratton alleges that offers for a unilateral contract were made when (1) the ABFP published the Reciprocity Agreement in 1995 and 1996, and (2) Dr. Young confirmed via telephone in October 1996 that ABFP certification via reciprocity was available. Dr. Stratton asserts in his complaint that

> the consideration that would flow to ABFP would be to gain more diplomates over whom they would then have power to pursue ABFP's stated purposes, especially to "assure the fitness of specialists in Family Practice' [sic] by certification exam and by recertification every 6 to 7 years with the $850 to $1350 fee that each exam would generate for ABFP.

5

Dr. Stratton states that he also gave consideration by not returning to residency training. In his response to the instant motion, Dr. Stratton proposes an alternate theory of consideration — that the American public, as the third-party beneficiary of the purported contract, is benefitted by the availability of superior family medical care, the provision of which is one of the ABFP's purposes. Dr. Stratton argues that the offer of certification based on reciprocity was irrevocable, because he substantially performed the requirements for reciprocal certification prior to approval of the policy changes[2] and completely satisfied the requirements prior to the effective date of the changes.[3]

In summary, Dr. Stratton claims that the publication of the pre-1998 Reciprocity Agreement constituted an offer of eligibility to sit for the ABFP certification examination; he accepted the offer by initiating the process of obtaining GBCP certification; the offer became irrevocable upon substantial completion of the GBCP certification process; and the ABFP breached the parties' contract when it denied Dr. Stratton's request to sit for the 1999 certification examination based on his failure to satisfy the amended eligibility criteria. Dr.

---

[2]In his complaint, Dr. Stratton states that the changes were approved on June 30, 1998. In fact, the amendment was approved by the Board at an April 24-26, 1995, meeting.

[3]Dr. Stratton defines the effective date of the policy changes as July 9, 1999, the date of the first ABFP certification test for which the new Reciprocity Agreement was in effect. Because the court can resolve this motion without determining whether the alleged offer was irrevocable, it need not decide the effective date of the change.

6

Stratton alleges that the ABFP's breach caused significant loss in the form of travel expenses and related lost wages sustained in the course of obtaining RCGP certification, RCGP exam preparation costs, and lost income as a result of not being an ABFP-certified family practitioner.

A unilateral contract is formed where an offer invites acceptance and consideration in the form of performance, but does not require the offeree to make any promise in return. *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 600 n.18 (6th Cir. 2004). Although a unilateral contract may be binding despite a lack of mutual obligation, it nevertheless must be supported by consideration. *Hale v. Cundari Gas Transmission Co.*, 545 S.W.2d 680, 683 (Ky. 1970); *see also* 1 *Williston on Contracts* § 1:17 (4th ed.). Consideration may be established by showing either a benefit to the promisor or a detriment to the promisee. *Wallace v. Cook*, 227 S.W. 279, 281 (Ky. 1921). Consideration contemplates the acquisition or relinquishment of a legal right. *Id.*

Dr. Stratton alleges that he bestowed a benefit on the ABFP both by enabling it to achieve its purposes and by providing enhanced quality care to ABFP's intended beneficiaries. He further alleges that he suffered a detriment by declining to return to residency training. The court finds that, as a matter of law, Dr. Stratton's course of action in obtaining RCGP certification did not provide the necessary element of consideration to make the alleged contract between the parties binding.

The Seventh Circuit has upheld summary judgment for the defendant in a breach-of-contract claim under circumstances similar to this case. *Patel v. Am. Bd. of Psychiatry & Neurology, Inc.*, 975 F.2d 1312 (7th Cir. 1992). There, an applicant for medical board certification argued that a letter he received from the board, stating that he qualified despite having done a pre-graduation foreign internship, constituted an offer to waive the usual post-graduation internship requirement. *Id.* at 1313. Based on that representation, the plaintiff fulfilled the remaining criteria. *Id.* The court found that any contract formed was unenforceable, because the detriment the plaintiff incurred by seeking approval of his pre-graduation internship and completing a three-year residency had not been part of any bargain between the parties, and therefore could not qualify as consideration. *Id.* at 1314.

The court in *Patel* noted, however, that "[i]t's not as if the Board had told [the plaintiff] that if he sat for some exam . . . the Board would credit his pre-graduation internship." *Id.* This comment by the court seems to suggest that Dr. Stratton's situation is distinguishable, in that Dr. Stratton in fact sat for several exams in reliance on his belief that, by doing so, he would be allowed to take the ABFP test. Upon closer inspection, Dr. Stratton's case nevertheless lacks the same critical element that was missing in *Patel* — requested performance. *See id.* The court in *Patel* found it significant that the board never asked the plaintiff to do or refrain from doing anything, even though it represented to him that his internship

8

would satisfy the requirement. *Id.* Similarly, the ABFP never requested or instructed Dr. Stratton to seek RCGP certification, to seek ABFP certification, or not to return to his residency training.

In addition to not having requested Dr. Stratton's performance, ABFP also did not benefit from his actions. Another court has found that a law student's hard work and scholastic excellence could not satisfy the consideration requirement for the same reason. *Blatt v. Univ. of S. Cal.*, 5 Cal. App. 3d 935, 943 (Cal. Ct. App. 1970). Even assuming that ABFP does benefit from certifying doctors, this benefit is accomplished only if and when the ABFP performs. That is, the ABFP receives no benefit from doctors obtaining RCGP certification, but only from its own qualification procedure, which was not implemented here.

Without reaching the ABFP's arguments regarding offer, revocation, and the statute of frauds, the court finds that the alleged contract fails for lack of consideration. The ABFP did not request Dr. Stratton to take any action, and Dr. Stratton's RCGP certification did not bestow any benefit on the ABFP. Therefore, the ABFP is entitled to summary judgment on Dr. Stratton's breach-of-contract claim.

### B.  Promissory Estoppel

The doctrine of promissory estoppel dictates that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is

9

binding if injustice can be avoided only by enforcement of the promise." *Restatement (Second) of Contracts*, § 90, *quoted in McCarthy v. Louisville Cartage Co.*, 796 S.W.2d 10, 11 (Ky. Ct. App. 1990).  To state a claim for promissory estoppel, a plaintiff must allege that (1) the defendant made a material misrepresentation or omission; (2) the defendant was aware of the facts; (3) the plaintiff was unaware of the facts; (4) the defendant intended or expected that the plaintiff would act in response to the representation; and (5) the plaintiff relied on the defendant's representations to his detriment.  *McCarthy*, 796 S.W.2d at 12.  The element of consideration required in a contractual relationship is replaced by detrimental reliance.  *Id.*  The detrimental reliance must be reasonable to support a claim for promissory estoppel.  *Rivermont Inn, Inc. v. Bass Hotels Resorts, Inc.*, 113 S.W.3d 636, 642 (Ky. Ct. App. 1996).

     Dr. Stratton claims that he was entitled to rely on the publication of the Reciprocity Agreement in 1995 and 1996, Dr. Young's statements as reported in *Family Practice News* in September 1996, and Dr. Tollison's February 17, 1998, letter recognizing the availability of reciprocity for the July 1998 examination.  Dr. Stratton asserts that, because his intent to pursue ABFP certification via reciprocity was evident in his correspondence, the ABFP should have reasonably expected that he would seek RCGP certification in reliance on its representations and its failure to notify him that the requirements had changed.  Dr. Stratton's reliance was detrimental to him, he urges, because he spent many hours and incurred significant

expenses studying and traveling.

The ABFP argues that Dr. Stratton's failure to consult additional resources to verify the continued validity of the 1995 Reciprocity Agreement renders his reliance unreasonable, and relies on *Poindexter v. Am. Bd. of Surgery, Inc.*, 911 F. Supp. 1510 (N.D. Ga. 1994), to support its position. There, the plaintiff allegedly relied on a letter from the defendant stating that he could apply for certification, but knew when he received the letter that he did not meet certain educational requirements for eligibility. *Id.* at 1522. The court found that the plaintiff's reliance was unreasonable. *Id.* Because the plaintiff knew he had not met the applicable criteria, "interpreting the Board's letter to say that he had defies reasonable comprehension." *Id.* at 1523.

Unlike the plaintiff in *Poindexter,* Dr. Stratton was not in fact aware of the changed requirements for reciprocal certification. Whether Dr. Stratton's reliance on the Reciprocity Agreement as published in 1995 and 1996 was reasonable, considering both Dr. Tollison's silence with regard to the changes in 1998 and Dr. Stratton's failure to confirm its continued validity, is a question of fact for the jury to determine. *See, e.g., Bass v. Janney Montgomery Scott, Inc.*, 210 F.3d 577, 590 (6th Cir. 2000) (reasonableness of reliance is question of fact). Similarly, Dr. Stratton has raised an issue of fact regarding whether the ABFP, in light of Dr. Stratton's communications with it, should have expected Dr. Stratton to act under the presumption that the Reciprocity Agreement was still in effect. Therefore,

summary judgment on Dr. Stratton's promissory estoppel claim is not appropriate.

### C. Negligent Misrepresentation

Under Kentucky law, negligent misrepresentation consists of negligently supplying "false information for the guidance of others in their business transactions," upon which the others justifiably rely to their detriment. *Presnell Constr. Mgrs. Inc. v. E.H. Constr., LLC*, 134 S.W.3d 575, 580 (Ky. 2004), *quoting Restatement (Second) of Torts*, § 552 (1977). An action for negligent misrepresentation must be based on an affirmative misstatement, not an omission. *Leal v. Holtvogt*, 702 N.E.2d 1246, 1253 (Ohio Ct. App. 1998) (applying *Restatement (Second) of Torts*, § 552).

Dr. Stratton relies on Dr. Tollison's February 1998 letter as the basis for his negligent misrepresentation claim. Dr. Tollison did not make any affirmative representations as to Dr. Stratton's eligibility for the 1998, or any other, ABFP examination in that letter. Dr. Stratton's reliance on the letter was based on the fact that it did not mention the pending changes in eligibility requirements. Because Dr. Stratton's negligent misrepresentation claim is premised on an omission, it fails as a matter of law, and the ABFP is entitled to summary judgment on that count.

### D. Intentional Misrepresentation

Dr. Stratton has conceded that his claim for intentional misrepresentation is not valid in light of discovery. Therefore, ABFP is entitled to summary judgment on

this count.  Accordingly,

**IT IS ORDERED** that the defendant's motion for summary judgment (DE 23) is **GRANTED IN PART** and **DENIED IN PART**.  The defendant's motion for summary judgment is **GRANTED** as to Counts I (breach of contract), III (negligent misrepresentation), and IV (intentional misrepresentation).  The defendant's motion for summary judgment is **DENIED** as to Count II (promissory estoppel).

Signed on October 4, 2005

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY